IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MORRIS BIVINGS, *on behalf of himself and others similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>EURAMEX MANAGEMENT GROUP, LLC; WESLEY APARTMENT HOMES, LLC; IGNACIO DIEGO; AND JAMIN HARKNESS,<br><br>    Defendants. | CIVIL ACTION FILE NO.<br><br>_____ |

## COMPLAINT

Named Plaintiff Morris Bivings brings this action for damages and other relief on behalf of himself and others similarly situated, by and through undersigned counsel, for failure to pay overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") and states and alleges:

## THE PARTIES

1.    Named Plaintiff Morris Bivings ("Named Plaintiff") resides in Gwinnett County, Georgia.

2.     Defendant Euramex Management Group, LLC ("Defendant Euramex") is a Georgia company with its principal office located at 1010 Huntcliff Road, Suite 2315, Atlanta, Georgia 30338, as listed with the Georgia Secretary of State.

3.     Defendant Euramex may be served with process by delivering a copy of the complaint and summons to its registered agent, Michael P. Kornheiser, at 6400 Powers Ferry Road Suite 150, Atlanta, Georgia 30339.

4.     Defendant Wesley Apartment Homes, LLC ("Defendant Wesley") is a Georgia company with its principal office located at 1010 Huntcliff Road, Suite 2315, Atlanta, Georgia 30338, as listed with the Georgia Secretary of State.

5.     Defendant Wesley may be served with process by delivering a copy of the complaint and summons to its registered agent, Michael P. Kornheiser, at 6400 Powers Ferry Road Suite 150, Atlanta, Georgia 30339.

6.     On information and belief, Defendant Ignacio Diego ("Defendant Diego") owns Defendant Euramex and Defendant Wesley.

7.     Defendant Diego may be served with process personally at his home address, at the offices of Defendants Euramex and Wesley, or wherever he may be found. Alternatively, Defendant Diego may be served with process by leaving a

copy of the complaint and a summons with someone of "suitable age and discretion" residing at his home address.  Fed.R.Civ.P. 4(h).

8.     On information and belief, Defendant Jamin Harkness ("Defendant Harkness") serves as Vice President, Property Operations for Defendant Wesley.

9.     Defendant Harkness may be served with process personally at his home address, at the offices of Defendant Wesley, or wherever he may be found. Alternatively, Defendant Harkness may be served with process by leaving a copy of the complaint and a summons with someone of "suitable age and discretion" residing at his home address.  Fed.R.Civ.P. 4(h).

## JURISDICTION & VENUE

10.     The Court has original jurisdiction over the claims stated herein pursuant to 28 U.S.C. § 1331.

11.     Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B)(1)(a), venue is proper in this Court because a substantial portion of the events giving rise to the claims of Named Plaintiff and others similarly situated occurred within the Atlanta Division of the United States District Court for the Northern District of Georgia.

12.     The residential properties operated by Defendants, including, but not limited to, The Communities at Wesley Kensington, are a unified operation under

the common control of Defendants for the common business purposes of providing

and managing multifamily residences ("Euramex Enterprise").

13.     At all relevant times, on information and belief, Defendants' Euramex

Enterprise has had at least $500,000.00 in annual gross volume of sales made or

business done.

14.     At all relevant times, Defendants have been "employers" engaged in

interstate commerce and/or the production of goods for commerce within the

meaning of the FLSA.

15.     At all relevant times, Defendants employed Named Plaintiff and

others similarly situated who were engaged in commerce and/or the production of

goods for commerce.

16.     Named Plaintiff and others similarly situated are individuals who have

been employed by Defendants and received hourly wages for maintenance services

within the three years prior to the filing of this lawsuit and continuing through the

duration of this action ("Maintenance Technicians").

17.     Named Plaintiff has consented in writing to be a party to this action

pursuant to 29 U.S.C. § 216(b).  A true and correct copy of Named Plaintiff's

signed consent form is attached as Exhibit A.

18.    Other Maintenance Technicians have expressed interest in joining this lawsuit.  *See e.g.*, Exhibit B, which is a true and correct copy of the consent form signed by Troy Emfinger; Exhibit C, which is a true and correct copy of the consent form signed by Leon L. Robinson, Jr.

19.    As the case proceeds, other Maintenance Technicians will likely sign consent forms and seek to join this action.

### FACTUAL ALLEGATIONS SHOWING THAT DEFENDANTS ARE JOINT EMPLOYERS

20.    On information and belief, Defendant Diego is the organizing member of a group of companies, including, but not limited to, Defendants Euramex and Wesley, that is engaged in the business of owning, developing, constructing, and managing multifamily residences.

21.    Defendants Euramex and Wesley share the same principal place of business located at 1010 Huntcliff Road, Suite 2315, Atlanta, Georgia 30338.

22.    On information and belief, at times relevant to this action, Defendant Diego directly and indirectly controlled, determined, and directed the day-to-day operations of the Euramex Enterprise.

23.    On information and belief, Defendant Diego determines the payroll policies governing the payment of Maintenance Technicians.

24.     On information and belief, Defendant Diego directly and indirectly determines the compensation practices for the Euramex Enterprise.

25.     On information and belief, Defendant Diego determined the practice that purported to compensate Maintenance Technicians with compensatory time off ("comp-time") for certain hours worked in excess of 40 per week.

26.     On information and belief, Defendant Diego directly and indirectly determines the job duties performed by Maintenance Technicians.

27.     On information and belief, Defendant Diego directly and indirectly determines the policies and practices used to track Maintenance Technicians' hours worked.

28.     Defendant Diego has the power to hire and fire Maintenance Technicians.

29.     On information and belief, Defendant Diego maintains the employment records of Maintenance Technicians.

30.     On information and belief, Defendant Harkness directly and indirectly controlled, determined, and directed the day-to-day operations of Defendant Wesley at times relevant to this action.

31.     On information and belief, Defendant Harkness directly and indirectly determines the compensation practices for Defendant Wesley.

32.     On information and belief, Defendant Harkness determined the practice that purported to compensate Maintenance Technicians with comp-time for certain hours worked in excess of 40 per week.

33.     On information and belief, Defendant Harkness directly and indirectly determines the job duties performed by Maintenance Technicians.

34.     On information and belief, Defendant Harkness directly and indirectly determines the policies and practices used to track Maintenance Technicians' hours worked.

35.     On information and belief, Defendant Harkness has the power to hire and fire Maintenance Technicians.

36.     On information and belief, Defendant Harkness maintains the employment records of Maintenance Technicians.

37.     On information and belief, Defendant Harkness exercised, and continues to exercise, control over the services provided by Maintenance Technicians.

38.     On information and belief, Defendant Harkness is regularly present at the residential properties managed by Defendants.

39.     The pay records issued to Maintenance Technicians each pay period show the name of Defendant Euramex and the address shared by Defendants Euramex and Wesley.

40.     Defendants Euramex, Wesley, Diego, and Harkness are, or have been, joint employers for the purposes of the FLSA at times relevant to this action.

### FACTUAL ALLEGATIONS IN SUPPORT OF NAMED PLAINTIFF'S CLAIM ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED

41.     Defendants operate and manage thousands of apartment units in the Atlanta metropolitan area.

42.     Defendants employ Maintenance Technicians to perform maintenance work on the units managed by Defendants.

43.     Maintenance Technicians' job duties consist primarily of manual labor.

44.     Maintenance Technicians perform "punch-out" work on properties managed by Defendants.

45.     The punch-out work performed by Maintenance Technicians includes inspecting the condition of the residential units on properties managed by Defendants and making any necessary repairs.

46.     For example, Maintenance Technicians perform repairs on appliances and heating and air conditioning systems in the units on properties managed by Defendants.

47.     By way of further example, after a tenant vacated a unit, Maintenance Technicians make necessary repairs in anticipation of the arrival of a new tenant.

48.     Maintenance Technicians complete work orders for repairs requested by tenants living on properties managed by Defendants.

49.     Maintenance Technicians perform a variety of other duties on properties managed by Defendants, such as operating trash compactors, cleaning the grounds, cleaning pools, and arranging patio furniture.

50.     Defendants typically schedule Maintenance Technicians to work 40-hour workweeks.

51.      Defendants typically schedule Maintenance Technicians to be at work for approximately nine hours per day, including a one-hour meal period, during each weekday worked.

52.     During times relevant to this action, Defendants required Maintenance Technicians to perform weekend work on a regular basis.

53.     For example, during the workweeks for which weekend work was scheduled, Defendants typically required Named Plaintiff to work approximately four hours on each Saturday and approximately four hours on each Sunday.

54.     During each workweek for which weekend work was scheduled, Named Plaintiff was typically scheduled to be "on-call" 24-hours per day.

55.     Defendants use a computerized timekeeping system to track hours worked by Maintenance Technicians.

56.     However, during times relevant to this action, Defendants failed to track certain hours worked by Maintenance Technicians.

57.     For example, Named Plaintiff began work prior to clocking in and continued working after clocking out.

58.     On some occasions, Named Plaintiff was told to begin work prior to clocking in.

59.     When Named Plaintiff was instructed to begin work prior to clocking in, he was told that he would be called when it was time to clock in.

60.     By way of further example, Named Plaintiff was interrupted during meal periods and instructed to perform work while off the clock.

61.     Other Maintenance Technicians have also performed work off the clock, including Opt-In Plaintiffs Emfinger and Robinson, Jr.

62.    Because Maintenance Technicians performed work off the clock, Defendants failed to maintain accurate time records of all hours worked by Maintenance Technicians.

### COUNT ONE

**DEFENDANTS' WILLFUL FAILURE TO PAY NAMED PLAINTIFF AND OTHERS SIMILARLY SITUATED FOR ALL HOURS WORKED IN EXCESS OF 40 PER WEEK AT THE RATE REQUIRED BY THE FLSA**

63.    At all times relevant to this action, Defendants were required to pay Named Plaintiff and others similarly situated at an overtime rate of not less than one and one half times their regular rate for hours worked in excess of 40 per week pursuant to 29 U.S.C. § 207.

64.    However, Named Plaintiff was not properly compensated for all hours worked, including those in excess of 40 per week.

65.    For example, Named Plaintiff was not compensated for hours worked off the clock, including those worked before and after his scheduled shift and those worked during his meal period.

66.    Named Plaintiff was not properly compensated for all hours worked during weeks in which he was on-call.

67.    By way of example, for certain hours worked, Named Plaintiff and Opt-In Plaintiffs Emfinger and Robinson, Jr. were promised one compensatory hour off for each hour of overtime work instead of overtime wages.

68.    Defendants' attempts to evade paying the required overtime rate by offering to compensate Named Plaintiff and Opt-In Plaintiffs Emfinger and Robinson, Jr. with compensatory time off for hours worked in excess of 40 per week were without legal basis.

69.    Defendants' attempts to evade paying the required overtime rate by offering to compensate Named Plaintiff and Opt-In Plaintiffs Emfinger and Robinson, Jr. with compensatory time off for hours worked in excess of 40 per week were willful violations of the FLSA within the meaning of 29 U.S.C. § 255.

70.    At all times relevant to this action, Defendants were required to maintain accurate records of the hours worked by Named Plaintiff and others similarly situated.

71.    Defendant permitted, and on some occasions instructed, Named Plaintiff and Opt-In Plaintiffs Emfinger and Robinson, Jr. to work unrecorded hours.

72.     Therefore, Defendants violated the FLSA's recordkeeping requirements pursuant to 29 U.S.C. § 211(c) by failing to maintain accurate time records.

73.     On information and belief, Defendants subjected others similarly situated to the same policies and practices.

74.     On information and belief, others similarly situated worked in excess of 40 hours per week.

75.     On information and belief, others similarly situated were not properly compensated for all hours worked, including those in excess of 40 per week.

76.     Defendants' failure to pay Named Plaintiff and others similarly situated for all hours worked was without legal basis.

77.     Defendants' failure to pay Named Plaintiff and others similarly situated for all hours worked was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

78.     Pursuant to 29 U.S.C. § 216(b), Defendants are jointly and severally liable to Named Plaintiff and others similarly situated for three years of unpaid overtime wages, an equal amount as liquidated damages, and reasonable attorney's fees and costs of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff Morris Bivings, of behalf of himself and others similarly situated, prays that the Court:

– Certify this action as a collective action under the FLSA;

– Enter judgment in favor of Named Plaintiff and others similarly situated who opt into this action;

– Enter judgment against Defendants that Defendants' violations of the FLSA were willful;

– Award all unpaid wages for hours worked in excess of 40 per week owed to Named Plaintiff and others similarly situated who opt into this action;

– Award liquidated damages in an amount equal to the amount of all unpaid wages to Named Plaintiff and others similarly situated who opt into this action;

– Award Named Plaintiff and others similarly situated who opt into this action reasonable attorney's fees and costs pursuant to the FLSA; and

– Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Named Plaintiff Morris Bivings, on behalf

of himself and others similarly situated, demands a trial by jury.


Respectfully submitted: October 15, 2012.


MAYS & KERR LLC                              John L. Mays, Esq.
229 Peachtree Street                         Georgia Bar No. 986574
International Tower | Suite 980               Jeff Kerr, Esq.
Atlanta, Georgia 30303                       Georgia Bar No. 634260
Telephone:   (404) 410-7998
Facsimile:   (404) 855-4066
john@maysandkerr.com
jeff@maysandkerr.com                         Attorneys for Plaintiff

-15-